ERNEST A. SCHMIDT *et al.* Plaintiffs in Error, *vs.* THE J. F. SCHMIDT BROS. COMPANY *et al.* Defendants in Error.

*Opinion filed February 16, 1916—Rehearing denied April 6, 1916.*

1. CORPORATIONS—*when agreement among stockholders binds them but not the corporation.* An agreement among stockholders of a contracting company to settle the differences which have arisen among themselves, and which provides for the purchase by some of them of property belonging to the corporation, will not transfer title to the property of the corporation if the corporation is not a party to the agreement, but the promise by a party to the agreement, who was the principal stockholder, to pay all accounts and bills of the corporation, wind up its affairs in a lawful manner within three months and not to use its name for any new work will be enforced in a court of equity.

2. CONTRACTS—*when the inadequacy of consideration will not be considered.* Where an agreement among stockholders to settle their differences provides for a compromise and surrender of unliquidated claims for profits, together with all other claims, of every kind and description, of the parties against each other, the mere inadequacy of the price named in the agreement at which certain property of the corporation was to be sold to some of the parties will not be considered.

3. EQUITY—*when equity will take jurisdiction to relieve from breach of contract.* Where the damages caused by the breach of a contract to wind up the affairs of a contracting corporation and not to use its name for any new work are so uncertain and difficult of definite proof that an action at law will not furnish an adequate remedy, a court of equity may take jurisdiction.

4. PLEADING—*replevin is the proper action to try title to goods after alleged invalid sale.* Where a contract to which a corporation is not a party attempts to dispose of its property and possession is taken by the vendees, replevin is a proper form of action to try the question of title as between the corporation and vendees.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from and on writ of error to the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

W. T. ALDEN, C. R. LATHAM, and H. P. YOUNG, (T. A. SHEEHAN, of counsel,) for plaintiffs in error.

FRED H. ATWOOD, FRANK B. PEASE, CHARLES O. LOUCKS, and VERNON R. LOUCKS, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiffs in error began a suit in equity in the circuit court of Cook county against the J. F. Schmidt Bros. Company, John F. Schmidt and others, which resulted in a decree granting relief against John F. Schmidt but dismissing the bill as to the J. F. Schmidt Bros. Company. John F. Schmidt took an appeal, and the complainants sued out a writ of error to reverse so much of the decree as dismissed the bill against the J. F. Schmidt Bros. Company. The appeal and writ of error were consolidated in the Appellate Court, which reversed the decree and remanded the cause, with directions to dismiss the bill as to all of the defendants. The record has been brought before us by *certiorari* for review.

Before 1902 John F. Schmidt had been engaged in business in the city of Chicago for several years as a builder and general contractor. Two of his brothers, Henry W. Schmidt and Ernest A. Schmidt, had worked for him, and he owed the former $1000 and the latter $200 wages. The corporation known as the J. F. Schmidt Bros. Company was organized in 1902 with a capital stock of $15,000, for the purpose of conducting a contracting and building business. One hundred and thirty shares of the stock were issued to John F. Schmidt, ten shares to Henry W. for the $1000 wages then due him from John F. Schmidt, and ten shares to Ernest, who gave his note to John F. Schmidt for $800 in addition to the $200 then due him as wages. In 1904 Henry W. Schmidt left Chicago and turned over his stock to John F. Schmidt, who agreed to pay him $1000 as soon as he was able to do so, and did pay him $300 in September; 1908. The ten shares issued to Ernest were also subsequently delivered to John and Ernest's note for $800 was canceled. Otto E. and August T. Schmidt were younger

brothers, who were employed by the company but never owned any stock in it. Annie M. Schmidt (John F. Schmidt's wife) became the owner of one share of this stock, and except this one share of stock John F. Schmidt claimed to be the owner of all the stock in the company on September 3, 1909. John F. Schmidt was the president of the company from its organization to the filing of the bill. No dividends were ever declared by the corporation. Ernest, Henry, Otto and August received the prevailing wages for the work done by them, varying from one dollar a day at the beginning, to six or seven dollars a day afterward. The brothers Ernest, Otto and August claimed that they were entitled to receive a share of the profits of the company, and in March, 1908, they and their brother John had a general settlement, and the latter paid to each of the former $1607.86 as his proportion of the profits of the preceding year. An agreement was also then made for a division of the profits of the following year. No settlement, however, was made in March, 1909. John F. Schmidt claimed that the estimated profits of the preceding year were incorrect and that he had been overreached in the settlement of March, 1908. The brothers had many meetings in an endeavor to arrive at a settlement, and on September 3, 1909, at a meeting where all were present except Ernest, the following contract, which was written by John F. Schmidt and signed by all who were then present, was entered into:

"9/3-09.                    1705 N. Fairfield Ave., Chicago.

"Agreement by the undersigned, Henry, John, Otto, August and Ernest Schmidt, for the purchase of the tools now at Gary, Indiana, belonging to J. F. Schmidt Bros. Co., including also jackscrews now at 1705 Fairfield Ave., and 20 wheelbarrows now at 1673 N. Rockwell St., for the sum of $1000 cash paid to J. F. Schmidt by Otto, August and Ernest for the said tools.

"J. F. Schmidt agrees to and with said O., A. & E. & H. to wind up the corporation of the said J. F. Schmidt Bros. Co. in a lawful manner within three months, and O., A. & E. Schmidt agree to aid in the settlement of all former and present accounts and bills, which shall be credited to and charged to J. F. Schmidt until completely disposed of.

"J. F. Schmidt is not to use the name of J. F. Schmidt Bros. Co. for any new work, and in consideration of this agreement each of the said mentioned A. T. Schmidt, Otto E. Schmidt, E. A. Schmidt, J. F. Schmidt and H. W. Schmidt waive all claims of every kind and description against the other, and all the said parties hereto absolutely release the other from each and every charge ever made by any or either of them and to work in harmony toward this end.

A. T. SCHMIDT,<br>
OTTO E. SCHMIDT,<br>
J. F. SCHMIDT,<br>
H. W. SCHMIDT,<br>
E. A. SCHMIDT."

Witness: Henry C. Bach.

The contract was signed the next day by Ernest A. Schmidt. On that day. also the $1000 mentioned in the contract was paid to John F. Schmidt, who deposited it to the credit of the J. F. Schmidt Bros. Company and used $700 of it to pay the balance due Henry on the ten shares of stock which he had held. The other brothers also took possession of the tools mentioned in the contract. John F. Schmidt did not attempt to wind up the corporation or cease to use its name for any new work, but on November 15, 1909, he caused one share of the stock to be issued to G. W. Gronberg, one share to F. A. McKee and one share to H. E. Littler, and called a meeting on that date, at which Gronberg and McKee, together with John F. Schmidt, were elected directors. Replevin suits were instituted for the recovery of the tools and of the books of the corporation, and John F. Schmidt continued actively to solicit and secure new business in the name of the corporation. Thereupon the bill in this case was filed, in which, as subsequently amended, the brothers, except John F. Schmidt, were complainants, and the corporation, John F. Schmidt, F. A. McKee, G. W. Gronberg and H. E. Littler were defendants. The amended bill prayed that John F. Schmidt and the corporation each be enjoined from taking any contracts, doing any work or carrying on any business of the corporation or in its name; for an accounting of all the debts of the corporation and a decree that John F. Schmidt pay them; that the corpora-

tion be dissolved upon the payment of its debts and liabilities; and that the corporation and John F. Schmidt be enjoined from bringing any action of replevin against the complainants, or either of them, to recover the tools mentioned in the contract of September 3, 1909, and from prosecuting the actions of replevin already begun.

The answer, among other things, alleged that John F. Schmidt was defrauded and deceived in the settlement of March, 1908, by the misrepresentations of the complainants; that the contract of September, 1909, was not a valid and binding contract but was simply a proposition, which was to be subsequently reduced to· form and executed by the parties; that it was not signed by the officers of the corporation; that John F. Schmidt had no power or authority to enter into the contract on behalf of the corporation and that the same had never been ratified by the corporation; that the tools mentioned were worth $6500, and the sale of them for $1000 was a fraud on the stockholders and creditors of the said corporation, and that the corporation was indebted in excess of the sum of $12,000.

The cause was heard and taken under advisement by the court in January, 1910, and more than three years later, in April, 1913, a decree was rendered which dismissed the bill as to the corporation but perpetually enjoined John F. Schmidt from conducting business in the name of the J. F. Schmidt Bros. Company or soliciting orders or work under that name or from transferring any of the capital stock of the corporation. He was ordered to pay the debts of the corporation, hold the complainants harmless from liability on account of them, and cause the corporation to be wound up and the replevin suits to be dismissed.

The defendants in error insist that the contract which is the basis of the suit does not purport to be the contract of the corporation; that it was not executed on its behalf and is therefore not binding upon and cannot be enforced against it. This was the view of the trial court and the Ap-

pellate Court, and we do not disagree with it. The decree, so far as it dismissed the bill as to the corporation, was right. The stockholders of the corporation, however, had a right to agree upon a settlement of the differences which had arisen among themselves. The five brothers who signed the contract of September 3, 1909, were the only persons interested in the corporation, except the wife of John F. Schmidt, who owned one share of the par value of $100. While it is averred in the answer that the corporation owes $12,000, there is no averment that the company is insolvent, or that John F. Schmidt, who agreed to pay its debts, is not able to do so. While the agreement of the parties to sell the property of the corporation was not sufficient to transfer the legal title to such property, their contract, upon sufficient consideration, to do any lawful act was binding. While the sale of the tools for $1000 did not transfer the title to them, this fact does not relieve John F. Schmidt from the obligation of his contract. He agreed to wind up the corporation in a lawful manner within three months, to pay all accounts and bills of the corporation and not to use its name for any new work. It was within his power to do or not to do these things. There was nothing unlawful in his agreement and the contract is one which a court of equity will enforce.

The defendants in error insist that the contract was not intended to be a settlement; that it was a tentative agreement, and was intended to show what the contract was to be based upon and was so understood by everybody present. No facts tending to support this view are testified to by anyone except John F. Schmidt. The paper, upon its face, purports to be a complete contract. When the parties separated there remained nothing to be done to complete it except that it lacked Ernest's signature. The next morning the $1000 required to be paid was paid, and nothing appears to have been said in regard to the completion

of the agreement. It was acted upon by all the parties as a completed contract.

Defendants in error also insist that the consideration of $1000 was entirely inadequate and that the property agreed to be sold was worth $6500. There is a dispute in the evidence as to the value of the property, the testimony varying from $2500 to $6500. In considering the question of the inadequacy of the consideration it is to be borne in mind that the plaintiffs in error were claiming that they were entitled to a portion of the profits of the corporation under their contract with John F. Schmidt made in March, 1908. The profits of the corporation during the year from March, 1908, to March, 1909, do not appear in the evidence. The amount was uncertain, and the compromise and surrender of this unliquidated claim, together with all other claims, of every kind and description, of the parties against each other, as specified in the last clause of the agreement, remove the question of inadequacy from consideration in the case.

It is urged by the defendants in error that the plaintiffs in error had an adequate remedy at law for the $1000 paid and any damages sustained by them. The damages to the plaintiffs in error caused by the use of the name of the corporation in soliciting work and in the business of contracting and building are so uncertain and difficult of definite proof that an action at law would furnish no adequate remedy for the breach of the contract.

Replevin was the proper form of action to try the question of title to the tools and books as between the corporation and the plaintiffs in error. The decree should not have required John F. Schmidt to dismiss the replevin suits already begun or caused a writ of *retorno habendo* to be awarded in them or enjoined the prosecution of such suits or the institution of others.

The judgment of the Appellate Court will be reversed and the decree of the circuit court affirmed except as to the

dismissal of the replevin suits and the injunction in regard to them, and in those respects the decree will be reversed. The plaintiffs in error will pay one-third of the costs of this court and the Appellate Court and the defendants in error two-thirds of such costs.  *Judgment reversed.*